RYAN T. O'CONNOR, OSB No. 053353
O'Connor Weber LLC
1500 SW First Avenue, Suite 1090
Portland, OR 97201
Telephone: (503) 226-0923
Email: ryan@oconnorweber.com

RICHARD WOLF, OSB No. 873719
Richard L. Wolf PC
12940 NW Marina Way
Portland, OR 97231
Telephone: (503) 384-0910
Email: richardlwolf@att.net

Attorneys for Defendant Lorenzo Laron Jones

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

### Portland Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>**LORENZO LARON JONES,**<br><br>Defendant. | Case Nos. 3:19-cr-00333-IM<br>3:22-cr-00137-IM<br><br>**Defendant Lorenzo Jones's Motion to Recuse the Honorable Karin J. Immergut from Presiding Over These Cases** |

Defendant, Lorenzo Laron Jones, by and through his attorneys Richard L. Wolf and Ryan T. O'Connor, hereby moves, pursuant to 28 U.S.C. § 455(a) and § 455(3)(c), to recuse the Honorable Karin J. Immergut from the above-captioned

cases on the grounds and for the reasons set forth below and based on the attached declaration of counsel. Mr. Jones reserves the right to supplement his arguments under 28 U.S.C. § 455(a) and § 455(b)(1) until after the government has undertaken a review of its file to determine if additional information exists that would bear on the issues implicated by these subsections of the recusal statute.

## I.     Summary of the Argument

28 U.S.C. § 455(a) requires that "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

28 USCS § 455(b) requires that

He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

. . . . .

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy[.]

Judge Immergut served as the United States Attorney for the District of Oregon from approximately 2003 until 2009. The government alleges in Count 1 of the Third Superseding Indictment in case no. 19-cr-333 that,

> starting no later than June 22, 1989 and continuing to on or about the date of this Third Superseding Indictment [December 18, 2019], in the

District of Oregon and elsewhere, the defendant, Lorenzo Laron Jones, a/k/a "Low Down," [and] Ronald Clayton Rhodes, a/k/a "Big Fly," and other persons not named in this count of the Third Superseding Indictment, being persons employed and associated with the Hoovers, which enterprise was engaged in, and the activities of which affected interstate and foreign commerce, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with one another to violate Title 18 United States Code, Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Hoovers enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Section 1961(1) and (5), consisting of…

Mr. Jones contends that under 28 U.S.C. § 455(b)(1), United States Attorney Immergut prosecuted members of the Hoover Crips during the time described in Count 1 above and obtained personal knowledge about the Hoover Crips. Whether the Hoover Crips is a racketeering enterprise and whether Mr. Jones and Mr. Rhodes entered into a RICO conspiracy with members of that enterprise are presently disputed issues in this case. Therefore, Judge Immergut has "personal knowledge of disputed evidentiary facts concerning the proceeding" as described in 18 U.S.C. 455 (b)(1), requiring her recusal.

Mr. Jones further contends that under 28 U.S.C. § 455(b)(3), United States Attorney Immergut prosecuted Mr. Jones for his 2007 felon in possession of a firearm case (hereinafter FIP)—stemming from an August 2005 shooting incident in which a person was murdered in downtown Portland—under Case No. 3:07-cr-00168-MO. That event is pled as an overt act in paragraph 31 in the Third Superseding Indictment in Case No. 3:19-cr-00333-IM presently before the Court,

thereby requiring Judge Immergut's recusal under 28 U.S.C. § 455(b)(3) because the two proceedings have a common, single transaction or event at issue.

Mr. Jones further contends that United States Attorney Immergut's prosecution of Mr. Jones—including comments she made regarding the Portland Hoover Crips in 2008 in her capacity as the chief law enforcement officer for the District of Oregon, coupled with the relief Mr. Jones obtained from the lengthy sentence he received in the 2007 FIP prosecution—results in an appearance that would lead a reasonable person to question Judge Immergut's impartiality to preside over this case as it involves not only the same criminal allegation for which she prosecuted Mr. Jones in 2007, but also because she made public statements concerning the prosecution of the Hoover Crips in the District of Oregon in 2008 and those acts by other Hoover Crip members are all alleged to be part of the RICO conspiracy.

## II.    28 U.S.C. § 455 Imputes Responsibility for the Prosecution of All Crimes Within a Judicial District to the United States Attorney

The Ninth Circuit has made clear that,

> The statutory duty of each United States Attorney within his district is to "prosecute for all offenses against the United States." 28 U.S.C. § 547. Responsibility for prosecution necessarily includes responsibility for investigation: there can be no prosecution unless it is preceded by investigation. Responsibility for prosecution and the precedent investigation is that of the United States Attorney in his district; other attorneys are only his assistants, 28 U.S.C. § 542 and § 543.

*United States v. Arnpriester*, 37 F.3d 466, 467 (9th Cir. 1994). Consequently, it is irrelevant for purposes of 28 U.S.C. § 455 that United States Attorney Immergut did not appear in court concerning either Mr. Jones's 2007 felon in possession case or for the prosecution of any other Hoover Crips during the time of the alleged RICO conspiracy. As the chief law enforcement officer in the district in which Mr. Jones was prosecuted, Judge Immergut is deemed to have "served in governmental employment and in such capacity participated as counsel" in Mr. Jones's 2007 prosecution and in the prosecution of other Hoover Crip members during the time of the alleged RICO conspiracy. *Arnpriester*, 37 F.3d at 467.

### III. 28 U.S.C. § 455(b)(3) is Implicated Because Mr. Jones's 2007 FIP Prosecution by United States Attorney Immergut and This RICO Conspiracy Case Have a Common, Single Transaction or Event at Issue

Under 28 U.S.C. § 455(b)(3) the question is whether United States Attorney Immergut's prosecution of Mr. Jones is "concerning *the proceeding*" and/or whether she "expressed an opinion concerning the merits of the particular case in controversy[.]" Mr. Jones begins by addressing the first portion of subsection 455(b)(3)—whether the allegations of the 2007 felon in possession case, having been pleaded as overt act number 31 in the Third Superseding Indictment on which Mr. Jones will be tried—makes the 2007 prosecution and the current prosecution "concerning the [same] proceeding." The Ninth Circuit has also addressed this portion of the recusal statute.

In *United States v. Silver*, the Ninth Circuit said,

> The government argues that recusal was not required in this case because there is no reasonable basis for questioning Judge Keller's impartiality. Judge Keller ceased being United States Attorney in 1977, a few years before Silver was indicted. There is no factual connection or relationship between the current case and the 1982 mail fraud case; the crimes involved are different as are the facts surrounding the cases. *See e.g., United States v. Outler,* 659 F.2d 1306, 1312-13 (5th Cir. 1981)(stating that recusal is necessary under § 455(b)(3) "when the two proceedings have a common, single transaction or event at issue").

*United States v. Silver*, 245 F3d 1075, 1079 (9th Cir 2001). Mr. Jones argues the Third Superseding Indictment in this case, specifically, overt act number 31 citing the 2007 felon in possession offense, means the "two proceedings have a common, single transaction or event at issue." *Id.* at 1079.

As the Fifth Circuit recognized in in the case cited by the Ninth Circuit in *Silver*, *United States v. Outler*,

> The latter section [§ 455(b)(3)] is applicable only when the two proceedings have a common, single transaction or event at issue. See *Mixon v. United States*, 620 F.2d 486 (5th Cir. 1980). There was no connection between appellant's probation revocation hearing in 1977 and the investigation of his medical practice in 1979. No single fact or event was common to both proceedings. Accordingly, Magistrate Carey was not required to disqualify himself from issuing the search warrant in question, and all evidence was properly seized and admitted.

*United States v. Outler*, 659 F2d 1306, 1313 (5th Cir 1981). In Mr. Jones's case, overt act number 31 in the Third Superseding Indictment before the court involves the same offense for which United States Attorney Immergut prosecuted Mr.

Jones, therefore, the two proceedings have a "common, single transaction or event at issue." *Silver*, 245 F3d at 1079.

### IV. 28 U.S.C. § 455(b)(1) is Implicated Because Judge Immergut Has Personal Knowledge of Disputed Evidentiary Facts Obtained as United States Attorney

Among the disputed evidentiary issues in the case before the Court is whether the Portland Hoover Crips are a racketeering enterprise and whether Mr. Jones and Mr. Rhodes,

> and others persons not named in this count of the Third Superseding Indictment, being persons employed by and associated with the Hoovers, which engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with one another to violate Title 18 United States Code, Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Hoover enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, section 1961 (1) and (5)….

Third Superseding Indictment, pg. 9-10.

United States Attorney Immergut's office pursued a prosecution against members of the Portland Hoover Crips during the time alleged as part of the RICO conspiracy charged in Count 1 of the Third Superseding Indictment in Case 3:19-cr-00333-IM. The government is alleging that all acts committed by *any* Portland Hoover Crips are evidence of the RICO conspiracy and proof of the Portland Hoover Crips being a racketeering enterprise. As quoted above, part of the government's case requires the government prove the Portland Hoover Crips—

which includes unindicted coconspirators who the government contends are all Portland Hoovers—conspired to commit RICO between June 22, 1989, and December 18, 2019. Third Superseding Indictment, pg.10.

In a March 16, 2008 article in the *Oregonian* published on page C1, (which fell between the time of Mr. Jones's FIP January 2008 trial and his May 2008 sentencing) in an article headlined, "Task Force Gives Cops Muscle to Hit Gangs," United States Attorney Immergut was quoted as saying, presumably regarding the recent prosecution of Portland Hoover Crip members in connection with planning to commit home invasion robberies in Vancouver, Washington, that was mentioned elsewhere in the article, "Gangs don't recognize borders between Vancouver and Oregon." Exhibit 1, pg. 2. The same article goes on to state,

> Though federal prosecutors in major cities such as New York and Los Angeles have worked to cripple organized gangs such as the Latin Kings and Black Gangster Disciples, Oregon law enforcement officials say street gang activity in the Portland area isn't so easy to identify.
>
> "One of the challenges is to figure out if people are actually organized," Immergut said. "There really aren't obvious big hierarchical and organized gangs plaguing our cities. So we start looking at what are our biggest threats. But that has been a little difficult to wrap our arms around."

Exhibit 1, pg. 2. These quotes demonstrate extrajudicial statements revealing "personal knowledge of disputed evidentiary facts concerning the proceeding" requiring recusal of Judge Immergut under 28 USCS § 455(b)(1).

### V. 28 U.S.C. § 455(a) Requires Judge Immergut's Recusal Because a Well-Informed Person Might Reasonably Question Her Impartiality Under These Circumstances

28 USCS § 455(a) requires that "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The test for disqualification under section 455(a) is an objective one: whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980), *cert. den.*, 449 U.S. 1012 (1980).

The Seventh Circuit imposes a minority rule in which a denial of a motion to recuse *must* be pursued pretrial via mandamus. In a case charging RICO conspiracy case as well as VICAR offenses involving members of Chicago's El Rukn street gang, the first trial resulted in a reversal after the government used knowingly perjured testimony. *United States v. Boyd*, 208 F.3d 638, 641 (7th Cir. 2000), *reversed on other grounds*, *Boyd v. United States*, 531 U.S. 1135 (2001). The retrial was assigned to Judge Zagel. In 1983, Judge Zagel was the head of the Illinois state police, when a joint federal, state, and local task force that included members of the Illinois state police was investigating the El Rukn street gang. *Id.* at 646. Late in 1985 or early in 1986, when Director Zagel was still head of the state police, one of the defendants on trial hired security guards for his restaurant

from a company called Security & Maintenance Service (SMS), which was owned and operated by El Rukn "General" Hunter, a key government witness at the 1996 trial. *Id*. at 646. The day of the arrest of some of the defendants on the RICO conspiracy and other charges, Director Zagel held a joint press conference with Richard Daley, at the time the Cook County prosecutor. Director Zagel remarked that "street gangs [such as the El Rukns] have grown to rival organized crime in the scope of their operations, and in the savagery in which they control entire sections of the city." The El Rukns task force produced the evidence that led to the 1989 indictments of the defendants facing retrial before Judge Zagel. *Id*. at 646. The Seventh Circuit wrote,

> In denying the motion to recuse, Judge Zagel said that the SMS investigation had nothing to do with the current trial, but this is incorrect. The creation of SMS was part of the drug and incidental murder conspiracy for which the defendants in the present case were tried and convicted before Judge Zagel, although SMS's activities were not charged as overt acts of the conspiracy. The judge was involved in the investigation of activities at issue in the trial, and the press conference shows that he had personal, extrajudicial knowledge of those activities. But SMS's activities were not at issue in this case except insofar as they connected [defendant] Robinson to the El Rukns. Had Judge Zagel learned of this connection from the 1986 investigation of SMS, Robinson would be entitled to a new trial before a different judge. But Zagel did not mention Robinson at the press conference, and there is no basis in the record for Robinson's claim that Zagel was the "point man" for the investigation and had "full knowledge" of its details. The judge denied this charge on the record, and in the absence of contrary evidence (Robinson's mere assertion not being evidence), we must credit the denial. *United States v. Balistrieri*, supra, 779 F.2d at 1202.

\* \* \* \* \*

  In any event, since nothing Zagel said at the press conference could reasonably be construed as an expression of opinion on the merits of the case that he presided over, we need not pursue this novel and interesting interpretive question. The cases interpreting the participation clause do not require a formal identity between the proceeding in which the government employee who is now a judge participated or expressed an opinion about; it is enough if they overlap significantly. See, e.g., *United States v. Outler*, 659 F.2d 1306, 1312-13 (5th Cir. 1981); *Jenkins v. Bordenkircher*, 611 F.2d 162, 166 (6th Cir. 1979); *Mixon v. United States*, 608 F.2d 588, 591-92 (5th Cir. 1979). And there was an overlap here, in the part of the SMS investigation that linked Robinson to the El Rukns. But Director Zagel never expressed an opinion about that aspect of the investigation, and the requisite "participation" is not imputed to a supervisor by virtue of his supervisory authority; it must be personal, and it was not. E.g., *Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995); *Kendrick v. Carlson*, 995 F.2d 1440, 1444 (8th Cir. 1993); *United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir. 1988). **The exception noted in the last-two cited cases for where the supervisor is the U.S. Attorney is not applicable here.**

  Recurring briefly to section 455(a), we wish to emphasize our belief that compliance with it is essential to the perceived legitimacy of the judicial process, especially when the defendants are vicious criminals facing long sentences and the prosecution has been marred by irregularities. It would have been far, far better for Judge Zagel to have recused himself in light of his earlier involvement with the parallel proceeding against the El Rukns and the fact that two of the El Rukns involved in that proceeding testified in the present case.

*Id*. at 646-48 (Bold emphasis added by Mr. Jones).

Another more recent Seventh Circuit case involving illegal reentry allegations addressed § 455(a) of the recusal statute and discussed the interplay

between a prior proceeding and a subsequent proceeding when the judge had been involved as a government lawyer in the prior proceeding

> The purpose of the provision [§ 455(a)] is to "promote public confidence in the integrity of the judicial process ... [which] does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (7th Cir. 1989). Under § 455(a), all a party has to show is that a judge's impartiality *might* be questioned by a reasonable, well-informed observer. *See United States v. Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998). The test for appearance of partiality is whether an objective, disinterested observer fully informed of the reasons that recusal was sought would entertain a significant doubt that justice would be done in the case. *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985). There is inherent difficulty in applying this standard as a judge is "both [] its interpreter and its object." *SCA Servs. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977).
>
> To address the difficulty in applying § 455(a), judges refer to the prohibitions outlined in § 455(b) because "affiliations that pose risks similar to those identified in § 455(b) may call for disqualification under § 455(a)." *Hatcher*, 150 F.3d at 637 (citing *Nat'l Union Fire Ins.*, 839 F.2d at 1229). 28 U.S.C. § 455(b) contains specific circumstances which mandate the recusal of a judge. § 455(a) is generally understood to encompass the situations outlined in § 455(b), but also a broader range of situations in which impartiality exists, but its appearance is compromised. Otherwise, "drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety." *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990).
>
> Relevant to our case, § 455(b)(3) instructs that a judge "disqualify himself ... [w]here he has served in governmental employment and ... participated as counsel [or] adviser ... concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." To argue that Judge Der-Yeghiayan properly denied Herrera-Valdez's motion, the government relies on

our application of § 455(b)(3) in *United States v. Lara-Unzueta*, 735 F.3d 954 (7th Cir. 2013). Similar to the case here, in *Lara-Unzueta*, the defendant was also a Mexican citizen who was a permanent resident, convicted of crimes, and deported back to Mexico. *Id.* at 955-56. Judge Der-Yeghiayan presided over the defendant's prosecution for illegal reentry, even though he served as District Counsel for the INS during Lara-Unzueta's deportation proceedings. *Id.* at 958. Lara-Unzueta argued that Judge Der-Yeghiayan should have recused himself pursuant to § 455(b)(3), and our decision in *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001). In *Ruzzano*, we held that while an Assistant U.S. Attorney must have actually participated in a related proceeding to trigger recusal under § 455(b)(3), the same is not needed for a judge who was "*the* [former] United States Attorney in [the] judicial district whe[re] the case was prosecuted," who must recuse regardless of direct participation. *Lara-Unzueta*, 735 F.3d at 960 (citing *Ruzzano*, 247 F.3d at 695). Lara-Unzueta argued that INS District Counsel was a similar role to the U.S. Attorney, and Judge Der-Yeghiayan should also be disqualified from cases relating back to his tenure leading INS's district office. We rejected this comparison, and found that the mandatory recusal requirement "for the [] Presidentially-appointed U.S. attorney ... does not extend to other past service in the Executive Branch." *Lara-Unzueta*, 735 F.3d at 960. Because there was no indication that Judge Der-Yeghiayan actually participated in Lara-Unzueta's removal case when he was District Counsel, we affirmed his decision not to recuse himself. *Id.*

The government argues that the same outcome should result here. But unlike in *Lara-Unzueta*, Herrera-Valdez is appealing the denial of his recusal motion under § 455(a). Judge Der-Yeghiayan's *actual* participation in Herrera-Valdez's underlying deportation case is not a requirement to trigger recusal under § 455(a). Instead, we must answer the question of whether the judge's participation in Herrera-Valdez's original deportation case would lead a reasonable, well-informed observer to question his impartiality in adjudicating Herrera-Valdez's illegal reentry prosecution and sentencing. *See Hatcher*, 150 F.3d at 637. We hold that it does.

We do not question Judge Der-Yeghiayan's impartiality in presiding over Herrera-Valdez's illegal reentry case. But a judge's

actual bias is not dispositive of the question of his disqualification under § 455(a), and observers outside of the judicial process "are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be." *Id.*, (citing *Mason*, 916 F.2d at 386). We conclude that a reasonable, disinterested observer could assume bias from the fact that the judge presiding over the defendant's prosecution for illegal reentry was the same person who ran the office that pursued, and succeeded in obtaining, the removal order that is the source of his current prosecution.

This is particularly the case given that the linchpin of Herrera-Valdez's case is his collateral attack against the removal order. It is reasonable to perceive that a judge may consciously or unconsciously credit the government's arguments that a removal order is valid when that same judge headed the office that sought and succeeded in obtaining the removal order. Judge Der-Yeghiayan's name appears on pleadings that advanced the INS's efforts to deport Herrera-Valdez. Members of the legal profession and complex government bureaucracies may understand that this does not necessarily mean that Judge Der-Yeghiayan reviewed each pleading on which his name appeared. Certainly it is not proof of the kind that would trigger recusal under § 455(b)(3). But a disinterested observer—within or outside of the legal profession—could reasonably conclude that attaching his name to certain pleadings suggests that Judge Der-Yeghiayan reviewed and approved the pleadings before they were submitted to the immigration court. As District Counsel, Judge Der-Yeghiayan had control over all of his office's decisions to pursue removal proceedings. How he delegated that control is open to speculation, and it is precisely that speculation that causes the perception of bias which is prohibited under § 455(a). Indeed, a reasonable observer could conclude that Judge Der-Yeghiayan was adjudicating the merits of a collateral attack against his own work product.

*United States v. Herrera-Valdez*, 826 F.3d 912, 917-19 (7th Cir. 2016).

In *Williams v. Pennsylvania*, 579 U.S. 1 (2016) the Supreme Court indicated that, "It is important to note that due process 'demarks only the outer boundaries of

judicial disqualifications.' *Aetna Life Ins. Co. v. Lavoie*, 475 U. S. 813, 828, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986)." *Williams v. Pennsylvania*, 579 US 1, 13 (2016).

Retired Associate Justice of the Supreme Court Souter, sitting by designation on the First Circuit Court of Appeals said the following concerning the test for judicial recusal under § 455(a), "The point under § 455(a) is not [the judge's] actual state of mind at a particular time, but the existence of facts that would prompt a reasonable question in the mind of a well-informed person about the judge's capacity for impartiality in the course of the trial and its preliminaries." *In re Bulger*, 710 F3d 42, 46 (1st Cir 2013). Regarding Bulger's specific allegations concerning his trial judge's apparent bias, Justice Souter went on to say, "We think it would be of no consequence to the reasonable person that the judge in the supervisory position had not been the United States Attorney, who carried ultimate responsibility for the office. See *United States v. Arnpriester*, 37 F.3d 466, 467 (9th Cir. 1994) (finding a U.S. Attorney responsible for the activities of his office)." *Id.* 710 F.3d at 49.

The following principles can be discerned from the above-cited cases regarding recusal applying the "appearance of bias" standard under 28 U.S.C. § 455(a).

1) The Presidentially appointed United States Attorney is the chief law enforcement officer in that judicial district and actual participation in a particular proceeding is unnecessary to impute knowledge of the action to the U.S. Attorney. *In re Bulger*, 710 F3d at 49, citing to *United States v. Arnpriester*, supra.

2) Due process "demarks only the outer boundaries of judicial disqualifications." *Williams v. Pennsylvania*, 579 US at 13.

3) "The test for disqualification under section 455(a) is an objective one: whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Conforte*, 624 F.2d at 881.

4) "The point under § 455(a) is not [the judge's] actual state of mind at a particular time, but the existence of facts that would prompt a reasonable question in the mind of a well-informed person about the judge's capacity for impartiality in the course of the trial and its preliminaries." *In re Bulger*, 710 F3d at 46.

5) "To address the difficulty in applying § 455(a), judges refer to the prohibitions outlined in § 455(b) because 'affiliations that pose risks similar to those identified in § 455(b) may call for disqualification under § 455(a).'" *Herrera-Valdez*, 826 F.3d at 917-18.

In considering these factors in the context of Mr. Jones's case, Judge Immergut should recuse herself under 28 USCS § 455(a) because the facts here would prompt a reasonable question in the mind of a well-informed person about Judge Immergut's capacity for impartiality. Judge Immergut, as United States Attorney for the District of Oregon, prosecuted Mr. Jones for an offense that is alleged as overt act number 31 in the Third Superseding Indictment over which Judge Immergut is presiding.

The lengthy sentence sought in United States Attorney Immergut's name was set aside by the Supreme Court of the United States in a federal *habeas* proceeding and resulted in Mr. Jones being released for "time served" when the 2007 FIP case came back before Judge Mosman. The government now alleges that Mr. Jones committed new crimes after being released early from the lengthy sentence imposed from the 2007 FIP case. A well-informed person would reasonably question whether Judge Immergut—as the chief prosecutor of the 2007 FIP case—feels that a conviction and a lengthy sentence in this case are necessary to finish the job undone by the relief Mr. Jones obtained in the federal *habeas corpus* proceeding.

In March 2008 United States Attorney Immergut spoke to the press between Mr. Jones's January 2008 conviction for FIP and his May 2008 armed career criminal sentence resulting in a sentence of 262 months of incarceration. In that

press interview United States Attorney Immergut opined on the interstate operation of the Portland Hoover Crips and also praised the Portland Gang Task Force for foiling an interstate home invasion robbery by other members of the Portland Hoover Crips. The government in this case will argue such offenses reveal the Portland Hoover Crips are a racketeering enterprise and Mr. Jones has conspired with this group and has also committed other violent crimes in aid of racketeering, even if the government is not offering that specific event in this trial.

All these undisputable facts would prompt a reasonable question in the mind of a well-informed person about Judge Immergut's capacity for impartiality in this case in which Mr. Jones faces the possibility of a mandatory sentence of life imprisonment without the possibility of parole. For the foregoing reasons, Judge Immergut should recuse herself from this case pursuant to 28 USCS § 455(a), § 455(b)(1) and § 455(b)(3).

Respectfully submitted on June 21, 2022, by

/s/ *Ryan T. O'Connor*  
Ryan T. O'Connor

/s/ *Richard L. Wolf*  
Richard L. Wolf

Attorneys for Defendant
Lorenzo Laron Jones